**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON SHEDDEN,<br><br>     Plaintiff,<br><br>  v.<br><br>PORT AUTHORITY OF NEW YORK AND NEW JERSEY,<br><br>     Defendant. | Civil Action No. 20-17063 (SDW) (AME)<br><br>**OPINION**<br><br>January 25, 2024 |

**WIGENTON**, District Judge.

Before this Court is Defendant Port Authority of New York and New Jersey's ("Defendant" or "the Port Authority") Motion for Summary Judgment (D.E. 40 ("Motion")) pursuant to Federal Rule of Civil Procedure ("Rule") 56. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, Defendant's Motion is **GRANTED**.

I.  **FACTUAL AND PROCEDURAL HISTORY**[1]

  **A. Plaintiff's Employment at and Termination by the Port Authority**

---

[1] Citations to "D.E." refer to the docket entries for the Complaint and the parties' motion papers, including briefs, affidavits, declarations, and exhibits attached thereto. Facts cited in this opinion are drawn from Defendant's Statement of Material Facts (D.E. 40-19), Plaintiff's Response to Defendant's Statement of Material Facts (D.E. 42), Defendant's Response to Plaintiff's Statement of Material Facts (D.E. 43-12), and the record documents cited therein. The facts are undisputed unless noted otherwise.

Plaintiff began his employment at the Port Authority's Aviation Department as a Program Manager for Newark Airport's Redevelopment Program on August 19, 2019, under a one-year probation. (D.E. 40-19 ¶¶ 1–2.) Plaintiff's job duties were to know the Design Build Agreement's design and performance criteria to ensure that contractors were implementing the design documents, to manage information technology consultant Keith Downing and baggage handling consultant Angela Fisher, and to report to his direct superior Jacklyn McCarthy and her superior, Thomas Lemanowicz. (*Id.* ¶ 3.)

In September 2019, Lemanowicz became concerned that, although all the relevant Design Build Agreement documents were available to Plaintiff, Lemanowicz never saw documents on Plaintiff's desk or saw him reviewing documents. (*Id.* ¶ 4.) At the same time, McCarthy and Lemanowicz started receiving complaints from Plaintiff's co-workers about Plaintiff's negative attitude and persistent complaining at work. (*Id.* ¶¶ 5–7.) Specifically, the two consultants Plaintiff was responsible for managing—Downing and Fisher—complained to McCarthy and Lemanowicz about Plaintiff's lack of interest and ability to manage them and that they would go weeks without hearing from Plaintiff. (*Id.* ¶¶ 10–11, 14–15.) Plaintiff claims that he had weekly meetings with the consultants and that neither Lemanowicz nor McCarthy ever discussed with him their concerns related to his quality of work. (D.E. 42 ¶¶ 10–12, 17.)

In about October or November 2019, Lemanowicz's supervisor "told him to fire Plaintiff after she caught Plaintiff a few times on his phone and not working." (D.E. 40-19 ¶ 9.) At around the same time, Lemanowicz and McCarthy began discussing whether Plaintiff was a "good fit" for the job "because he lacked program management and leadership skills and he was not trying to learn them." (*Id.* ¶ 18.) Lemanowicz informed Aviation Business Manager Kevin O'Driscoll

2

about Plaintiff's job performance issues and recommended termination of Plaintiff's employment first in October 2019 and then again in January or February 2020.  (*Id.* ¶¶ 19–20, 24.)

Plaintiff's wife became pregnant a few months after he started at the Port Authority.  (D.E. 43-11 ¶ 11.)  On March 26, 2020, Plaintiff sent an email to McCarthy and Aviation Business Manager Andrea Welch with an attachment which stated:  "I plan to use intermittent Parental Leave starting in August after I [will] have been at the Port Authority for one (1) year."  (D.E. 40-19 ¶ 25.)  Exactly one month later, Plaintiff sent the same email to McCarthy and Welch, notifying them again of his intent to take intermittent parental leave.  (*Id.* ¶ 26.)  The Port Authority's policy provides that where Family and Medical Leave Act (FMLA) leave is "taken because of a birth or placement of a child for adoption or foster care, an employee may take leave intermittently or on a reduced work schedule only with prior approval by the employee's manager."  (*Id.* ¶ 52.)  Although the parties agree that McCarthy knew that Plaintiff intended to use intermittent leave, they disagree whether Lemanowicz had any knowledge of Plaintiff's intent to take intermittent leave.  (D.E. 43-11 ¶ 15.)  The factual record shows that neither McCarthy, Welch, nor anyone else approved Plaintiff's intermittent leave request.

On May 19, 2020, Lemanowicz requested Plaintiff's termination in an email to O'Driscoll, which noted that it was "a follow[-]up to their discussion [about Plaintiff's termination] from the last week, which was the third discussion on the matter" and "that Plaintiff could not overcome his lack of ability as a project manager."  (D.E. 40-19 ¶¶ 27–29.)  The May 19 email is the first documented request for Plaintiff's termination.  (D.E. 43-11 ¶ 21.)

A draft termination memorandum was drafted and edited between Lemanowicz, O'Driscoll, and Welch through the months between May and August 2020 due to the disruptions caused by the COVID-19 pandemic.  (D.E. 40-19 ¶¶ 32–33.)  On August 3, 2020, Lemanowicz

3

circulated a draft termination memorandum stating that Plaintiff's termination was due to his "under-performance resulting from not having the program management skills the job requires." (*Id.* ¶¶ 38–40.) The memorandum cited other reasons, including Plaintiff has shown a "lack of consultant management and oversight," is "slow to respond to requests and often provides incomplete and inaccurate information," and has "put the Terminal One Program at risk of significant delays." (*Id.* ¶ 39.) On the same day, the Aviation Department had "concurred in the request to terminate Plaintiff's employment." (*Id.* ¶ 46.)

On August 10, 2020, Plaintiff emailed Defendant's Human Resources department his application for intermittent parental leave. (*Id.* ¶ 50.) Due to a typographical error with Plaintiff's hire date, the termination memorandum was not approved by Human Resources until August 13, 2020. (*Id.* ¶ 55.) Plaintiff was terminated on August 17, 2020. (*Id.* ¶ 56.)

### B. Procedural History

Plaintiff filed the instant lawsuit on November 24, 2020. (D.E. 1.) The Complaint asserts two claims against Defendant for FMLA interference (Count One), and FMLA retaliation (Count Two). (*Id.* ¶¶ 26–29.) On February 11, 2021, Defendant filed an Answer. (D.E. 7.) Following discovery, Defendant filed the instant Motion on June 23, 2023, and the parties timely completed briefing. (D.E. 40, 42, 43.)

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must "set forth specific facts showing the existence of . . . an issue for trial."  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing Fed. R. Civ. P. 56(e)).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  Further, the nonmoving party is required to "point to concrete evidence in the record [that] supports each essential element of its case."  *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004) (citing *Celotex Corp.*, 477 U.S. at 322–23)).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 322–23.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence."  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Liberty Lobby*, 477 U.S. at 255).  Instead, the district court "must view all of the facts in the light most favorable to the non-moving party," who is entitled to "every reasonable inference that can be drawn from the record," and if "there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the

conflicting versions of the parties." *Reedy v. Evanson*, 615 F.3d 197, 209 (3d Cir. 2010) (citations omitted).

### III. **DISCUSSION**

Plaintiff brings two theories of FMLA violation against Defendant: interference and retaliation. (D.E. 1 ¶¶ 26–29.) "An employer may be sued under the FMLA for interfering with an employee's FMLA rights, as well as for retaliating against an employee who exercises rights under the FMLA." *Marsh v. GGB, LLC*, 455 F. Supp. 3d 113, 121 (D.N.J. 2020) (citation omitted); *see also Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) (outlining the FMLA's interference and retaliation provisions). "[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 510 (3d Cir. 2009).

An FMLA interference claim arises under 29 U.S.C. § 2615(a)(1), which makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. On the other hand, an FMLA retaliation claim arises under 29 U.S.C. § 2615(a)(2), which makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. *See Callison*, 430 F.3d at 119. For the reasons stated below, this Court grants Defendant's Motion as to both Plaintiff's FMLA interference and retaliation claims.

#### A. Interference

Defendant argues that Plaintiff's interference claim should be dismissed because he has not set forth any evidence that he was denied a benefit to which he was entitled under the FMLA. Plaintiff is not entitled to intermittent parental leave without Defendant's approval and Defendant

never approved Plaintiff's intermittent leave request. Accordingly, Plaintiff's interference claim will be dismissed.

To state a claim for FMLA interference, a plaintiff must establish that:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (citation omitted). Unlike an FMLA retaliation claim, "[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison*, 430 F.3d at 120.

In this case, Plaintiff's FMLA interference claim fails because, when viewing the facts in the light most favorable to Plaintiff, he cannot establish that he was denied a benefit to which he was entitled under the FMLA. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007) ("In order to assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits.").

The FMLA states that "[l]eave . . . shall not be taken by an employee intermittently . . . unless the employee and the employer of the employee agree otherwise." 29 U.S.C. § 2612(b)(1). Courts also have found that an employee is not entitled to intermittent leave for the birth of his or her child unless the employer agrees to grant the employee such leave. *See, e.g., De Luca v. Tr. of Univ. of Pennsylvania*, 834 F. Supp. 2d 282, 289 (E.D. Pa. 2011) (noting that employers may refuse to grant intermittent leave for birth, adoption, or foster placement (citing *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 293 (4th Cir. 2009)); *Greer v. Cleveland Clinic Health Sys.-E. Region*, 503 F.

App'x 422, 426 (6th Cir. 2012) (stating that an employee "*may* be permitted to take [FMLA] leave intermittently") (emphasis added); *Dressler v. Cmty. Serv. Commc'ns, Inc.*, 115 F. App'x 452, 452 (1st Cir. 2004) ("[FMLA] intermittent leave [is] permitted at the employer's discretion." (citing 29 U.S.C. § 2612)).

District Courts within the Third Circuit have interpreted 29 U.S.C. § 2612(b)(1) to mean:

> [E]mployers may, at their option, require that employees take FMLA leave for certain reasons (birth, adoption or foster care placement under § 2612(a)(1)(A)-(B)) in one block of up to twelve weeks rather than intermittently. The requirement that employer and employee must "agree" on intermittent leave means that employers can refuse to allow this type of leave in birth, adoption and foster care placement cases.

*De Luca*, 834 F. Supp. at 289 (quoting *Dotson*, 558 F.3d at 293); *see also Padula v. Clarks Summit State Hosp.*, No. 19-2184, 2021 WL 4429089, at *11 (M.D. Pa. Sept. 27, 2021) ("If *both* the employee and employer *agree* that it is medically necessary, leave under the FMLA can be taken intermittently.") (emphasis added).

Therefore, Plaintiff is not entitled to take intermittent leave without the Port Authority's approval. Defendant argues, and the record shows, that none of Plaintiff's superiors (*i.e.*, McCarthy, Lemanowicz, and Welch) approved his request for intermittent leave. Plaintiff has not set forth evidence to create a genuine issue of material fact about whether his request for intermittent leave was approved.[2]

Plaintiff argues that no employee or representative of the Port Authority ever advised him that his request for intermittent parental leave would not be approved. In addition, Plaintiff claims that when he received the job offer from Lemanowicz, he expressed his concern about losing the flexibility his previous job afforded him and that Lemanowicz assured him that the Port Authority

---

[2] Plaintiff admits in his opposition brief that "Defendant's policy specifically allows for intermittent leave upon the approval of the employee's manager." (D.E. 42 at 13.)

is "very flexible" with remote work arrangements to help employees deal with family issues because "family first." ((D.E. 42 at 5, ¶¶ 2–3.)  Plaintiff also asserts during his deposition that when he inquired what "flexibility" he may have in his work schedule for the birth of his child, McCarthy told him to "use family leave," and that she never raised any concern or objection with Plaintiff's prospective use of intermittent leave.  (*Id.* at 9, ¶ 39.)

Plaintiff's arguments, however, are unpersuasive.  The Third Circuit has unequivocally stated that "for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld."  *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014).  Here, the Port Authority did not withhold any FMLA benefit because Plaintiff is not entitled to intermittent leave without the Port Authority's approval.

All Plaintiff has shown is that the Port Authority had held itself out as "flexible" in accommodating arrangements for family issues and that neither McCarthy nor anyone else disapproved his request to use intermittent parental leave.  Plaintiff has not pointed to any evidence in the record to show that anyone employed at the Port Authority approved his FMLA intermittent leave request.  As a matter of logic, the absence of disapproval does not mean approval.  *Hilborn v. Cordaro*, No. 06-0223, 2007 WL 2903453, at *7 (M.D. Pa. Sept. 28, 2007) (dismissing interference claim because the plaintiff's request for FMLA leave was "neither approved or denied").  Put simply, "an employer's failure to respond to an employee's request for leave, without a showing of actual harm, is insufficient to state an FMLA interference claim."  *Id.*

"An interference action is . . . only about whether the employer provided the employee with the entitlements guaranteed by the FMLA."  *Callison*, 430 F.3d at 119–20.  Therefore, the denial of FMLA benefits that an employee is entitled to is necessary to demonstrate an interference claim.  Plaintiff's interference claim cannot withstand Defendant's motion for summary judgment

9

because Defendant never approved Plaintiff's intermittent leave requests and there is no dispute that Plaintiff was not entitled to intermittent parental leave without Defendant's approval.

### B. Retaliation

Defendant argues that Plaintiff's retaliation claim fails similarly because he has not established that he was entitled to FMLA intermittent parental leave. Alternatively, Defendant argues that the retaliation claim should be dismissed for lack of causation. After considering both arguments, this Court will dismiss Plaintiff's retaliation claim.

Because FMLA retaliation claims "require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law." *Lichtenstein*, 691 F.3d at 302. "[C]laims based on circumstantial evidence" are "assessed under the burden-shifting framework" established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), whereas "claims based on direct evidence" are "assessed under the mixed-motive framework" set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276–77 (1989) (O'Connor, J., concurring). *Id.*

Plaintiff's claims are based on circumstantial evidence, thus warranting an analysis under the *McDonnell Douglas* framework. Under the *McDonnell Douglas* framework, a plaintiff "has the initial burden of establishing a prima facie case" by "point[ing] to evidence in the record sufficient to create a genuine factual dispute about each of the three elements of her retaliation claim[.]" *Id*. The elements of an FMLA retaliation claim are: "(1) [plaintiff] invoked [his] right to FMLA-qualifying leave, (2) [plaintiff] suffered an adverse employment decision, and (3) the adverse action was causally related to [plaintiff's] invocation of rights." *Id*. If the plaintiff succeeds in making a prima facie case, "the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action." *Gilhuly*, 755 F.3d at 193. The burden

then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination. *Id.*

As a threshold matter, Defendant contends that Plaintiff fails to meet the first element, invocation of a right under the FMLA, so his retaliation claim should be dismissed. Specifically, Defendant argues that "[b]ecause Plaintiff never obtained the Port Authority's consent to [intermittent] leave, he did not invoke any right to FMLA leave" and thus his retaliation claim fails. This argument is persuasive. The Third Circuit has stated that "the first elements of both [FMLA] theories are essentially identical: a plaintiff pressing either theory must establish, among other things, that he had a right to FMLA benefits." *Hayduk v. City of Johnstown*, 386 F. App'x 55, 60 (3d Cir. 2010). Accordingly, the absence of the Port Authority's consent to Plaintiff's request for intermittent leave is sufficient to defeat the invocation element for his retaliation claim.

The parties do not dispute that Plaintiff's termination constituted adverse employment action and that Plaintiff has met the second element of a retaliation claim. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001) ("[Plaintiff's] termination clearly fulfills the second prong of the prima facie case for a retaliation claim.").

Plaintiff's retaliation claim also fails because he has not raised a genuine issue of material fact about causation. A court considers two factors in determining causation: "(1) the temporal proximity between the protected activity and the alleged discrimination and (2) the existence of a pattern of antagonism in the intervening period." *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (internal quotation marks and citation omitted). "[T]hese are not exclusive ways to show causation," however, and courts must consider all proffered evidence as a whole as the element of causation is "highly context-specific." *Id.* Given this consideration, the record evidence precludes

11

a reasonable factfinder from concluding that there is a causal nexus between Plaintiff's invocation of FMLA leave and his termination.

McCarthy and Lemanowicz made the decision to terminate Plaintiff *before* the first time Plaintiff gave notice of his intent to take intermittent leave. Courts have found that "a plaintiff cannot establish a causal link when the 'decision' to take adverse employment action occurred before plaintiff exercised his or her FMLA rights." *Atchison v. Sears*, 666 F. Supp. 2d 477, 490 (E.D. Pa. 2009) (citing cases); *see Gilhuly*, 755 F.3d at 194 ("An employee cannot easily establish a causal connection between his protected activity and the alleged retaliation when he has received significant negative evaluations before engaging in the protected activity.").

Prior to Plaintiff's March 2020 notice, Lemanowicz and McCarthy received complaints about Plaintiff's work performance and his lack of management capabilities. (D.E. 40-19 ¶¶ 5–16.) In about October or November 2019, Lemanowicz's supervisor "told him to fire Plaintiff after she caught Plaintiff a few times on his phone and not working." (*Id.* ¶ 9.) At around the same time, Lemanowicz and McCarthy began discussing whether Plaintiff was a "good fit" for the job "because he lacked program management and leadership skills and he was not trying to learn them." (*Id.* ¶ 18.) Lemanowicz also informed O'Driscoll about Plaintiff's job performance issues and recommended termination of Plaintiff's employment in October 2019 and January/February 2020. (*Id.* ¶¶ 19–20, 24.) All of these events occurred before March 2020 when Plaintiff invoked his intent to take FMLA intermittent leave.

While Plaintiff denies some of the complaints (*id.* ¶¶ 16–17; D.E. 42 ¶¶ 16–17) and asserts that neither Lemanowicz nor McCarthy ever discussed with him his work quality (D.E. 40-19 ¶ 22; D.E. 42 ¶¶ 12, 22), it remains undisputed that both Lemanowicz and McCarthy had serious concerns about Plaintiff's job performance and recommended to their superiors that Plaintiff

12

should be terminated before March 2020 when McCarthy and Welch learned, for the first time, that Plaintiff wanted to take intermittent leave under the FMLA.  (D.E. 40-19 ¶ 25.)

Finding that the plaintiff failed to establish causation for his retaliation claim, the Third Circuit in *Gilhuly* noted that the reasons for plaintiff's termination were "deficiencies that had existed since before" his invocation of FMLA right and they were detailed in a memorandum prepared by his supervisor.  *Gilhuly*, 755 F.3d at 194.  This Court reaches the same conclusion based on the undisputed material facts.  When viewed in the light most favorable to Plaintiff, the evidence shows that there is no genuine issue of material fact that Defendant had legitimate, performance-based reasons to terminate Plaintiff before he informed his supervisors of his intent to take intermittent leave under the FMLA.

Therefore, even though Plaintiff was terminated on August 17, 2020—seven days after he submitted his application for intermittent parental leave to the Human Resources department—Plaintiff's supervisors had already decided to terminate Plaintiff based on deficiencies in his job performance long before he applied for intermittent leave.  *See id.* (finding that temporal proximity between request for FMLA leave and adverse employment action was insufficient to show causation when deficiencies in plaintiff's job performance were documented before he took his FMLA leave); *Helfrich v. Lehigh Valley Hosp.*, No. 03-05793, 2005 WL 670299, at *20 (E.D. Pa. Mar. 18, 2005) ("[W]hen an employer expresses concern about an employee's performance deficiencies prior to the time the employee engages in allegedly protected activity, no retaliatory inference arises." (citation omitted)).

Plaintiff has also failed to show any evidence of a pattern of antagonism.  In sum, Plaintiff has not demonstrated any genuine issue of material fact regarding causation.  Therefore, Plaintiff's retaliation claim fails, and this Court need not proceed further under the burden-shifting

13

framework. Even if this Court determined that Plaintiff satisfied his burden of establishing a *prima facie* case of retaliation, for all of the reasons set forth herein, Defendant had a legitimate, non-pretextual, and non-discriminatory reason to terminate Plaintiff. In either analysis, Plaintiff's claim would fail.

### IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion is **GRANTED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

| | |
|---|---|
| Orig: | Clerk |
| cc: | André M. Espinosa, U.S.M.J. |
| | Parties |